The next case this morning is 524-1112, People v. Danley. Arguing for the appellant is Eric Castaneda. Arguing for the appellee is Katrina Kuhn. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Good morning. Mr. Castaneda, you represent the appellant in this case? Yes. All right, you may proceed when you're ready. Okay, thank you. Good morning, your honors. Good morning to counsel, and may it please the court. My name is Eric Castaneda, and I'm with the Office of the State Appellate Defender on behalf of Mr. Anthony Danley. This case involves two issues. The first issue is regarding a structural error where a juror who expressly rejected the presumption of innocence principle served on the jury that convicted my client. And this requires automatic reversal and a new trial. The second issue is a crankle issue where Anthony established possible neglect of the case, and where he asks, alternatively, that this court remand this matter for a full hearing on his ineffective assistance of counsel claims with the representation of appointed counsel. As to the first issue, the structural error, in People v. Glasper and People v. Thompson, the Illinois Supreme Court stated that being tried before a biased jury constitutes structural error that requires the automatic reversal of the case. This court recently, in People v. Waldrop, also stated that if a defendant is tried before a biased jury, his conviction should be reversed without question as it amounts to structural error. Here, Juror 235 expressly rejected the principle that an accused is presumed innocent. He stated, what we all are trying to say is just because a person is presumed innocent when you come into a courtroom doesn't mean you're automatically going to think, yeah, he's innocent. That's not the deal. That's not why we are here. We're here to listen to you and listen to the prosecution about what this supposedly had done or allegedly had done. That's a quotation. He goes on to say, so we understand the fact that in the court of law in our land that, yeah, you are presumed innocent, but that doesn't mean we think he's guilty or innocent when we step in this door. But that's exactly what the presumption of innocence requires jurors to do is when a defendant, a criminal defendant, walks into the courtroom without any evidence, they are presumed innocent. Juror 235 was not qualified to serve as a juror as he expressly rejected this fundamental principle, and he showed his bias. Another juror who was in the courtroom, Juror 5. Before you go on to the other juror, there was only one response by Juror 235, and you say that he expressly rejected this doctrine. I don't see that. He says we're here to listen to you and listen to the prosecution. So it seems to me that it's kind of equivocal what he says. How do you respond to that? Justice Cates, I think when we look at counsel's question, and the question posed to the juror was if you were to have to vote guilty or not guilty right now, you know, that no evidence has been presented against my client, would you vote not guilty? And in that context, I think it's a clear rejection of the Zare principle. So after the jurors… Does he say he would vote not guilty? No, he didn't say that. He said just because you're presumed innocent, but that doesn't mean we think he's guilty or innocent when we step in this door. But that's exactly what you're required to presume when a client walks into the door and no evidence has been presented against them. So it's a clear rejection of the Zare principle that, you know, someone who walks into a criminal courtroom where there's no evidence presented against them is presumed innocent. I mean, it's just clear, and the jurors need to accept that and understand that. And another juror who was in the courtroom understood that he was rejecting this principle because she stated… She responded, I speak for myself. I quote, she said, I speak for myself and stated that I do accept this principle because that's what it is. You know, when someone comes to the courtroom, they're presumed innocent. And even the court's response, the court found an issue with the jurors' rejection of this principle because the court acknowledged there was an issue and stated, you know, I know there's been some confusion. I hope I've cleared that up. But unfortunately, the court, instead of ensuring that juror 235 understood and accepted the principle that a defendant is presumed innocent, it incorrectly addressed the principle that a defendant does not have to put on any evidence at trial. And that principle addresses the assignment of the burden and not the presumption of innocence. And so these are separate and distinct principles, and all four must be understood and accepted by all jurors. So the court failed to ensure under Rule 431B that every juror understood and accepted all four of their principles. So it did not carry out its duty to ensure that Anthony received a trial composed of a fair and impartial jury. And this error resulted in Anthony being tried by a biased jury, and it resulted in structural error that requires automatic reversal. At the same time, Anthony received ineffective assistance of counsel, where counsel failed to object to juror 235 serving on the jury. Counsel did not challenge the juror for cause, and he didn't use one of the three peremptory challenges that were available to him at the time. In People v. Morris, there the court found that defendant had established the ineffective assistance of counsel, where counsel failed to object to a juror who had been removed for cause, but yet still served on the jury that convicted the defendant. The juror, you know, participated in deliberations and ultimately signed the guilty verdict forms. And the court explained that this amounted to structural error and that, and I quote, the court stated that that same error, raised in the context of a claim of ineffective assistance of trial counsel, more than satisfies the prejudice requirement of the Strickland analysis. So just the same here, because counsel failed to prevent juror 235, who had rejected the presumption of innocence principle from serving on that jury, Anthony was denied the effective assistance of counsel because this juror participated during deliberations and ultimately signed the guilty verdict forms. May I go back to something earlier? I understand the case law on this. I appreciate you reviewing that. But going back to the circumstances earlier in the case that Justice Cates inquired about, the trial court judge did go through the four Zare principles with all the jurors previously, correct?  And you're not saying that that wasn't done or that was not done properly at that time, correct? Correct. When I read this through the first time, it struck me as being, looking at the context of it, that what the juror wasn't saying is that he expressly rejected it. But he was, when I first read it, responding to the question the previous juror had brought up, which says, I disagree with your terminology. And that his response was more in line of, here's the way we should think about it. In not rejecting it, he was explaining that as you walk into the courthouse, you don't have an idea of whether this person is guilty or innocent. I think maybe what caught my attention was the defense attorney somewhat inartfully posed the question, I thought, about, you know, is he innocent or not? And then the discussion was terminology. Your response to all of that, my initial reaction to this? Yeah, Justice Hackett, and I think also, I think counsel's question was straightforward. I think it's not something that I've seen in cases of counsel posing a question to jurors. But I think flat out, jurors are supposed to understand. And I think as you were reiterating what the juror stated, you know, we don't know whether he's guilty or innocent when he comes into the courtroom. That's not the standard. A juror is supposed, when a criminal defendant walks into the courtroom, flat out, that criminal defendant is innocent. And so there's evidence presented against that defendant. And jurors are required to understand instructions. They're given more complicated instructions during the jury instruction process. This is a simple, a defendant comes into the courtroom, he is presumed innocent. No questions about it. And the juror here rejected that. At the very minimum, did not understand that fundamental principle of criminal law. And I think counsel's questions were not complicated. I think counsel was pretty straightforward. If my client right now, without any evidence presented against him, would you vote not guilty? And the juror's response should have been a flat out yes, just like juror five said. That's what the response should have been. And juror five understood the presumption of innocence. And I think we can compare juror 235's response to juror five, who was in the courtroom and understood that he was rejecting this presumption. Thank you. And that's two. I see that my time there is running short. And so, you know, moving to the Krankel issue, I think Anthony also established possible neglect. We rely on the Bashum case, which is on all fours here, I think. You know, where counsel failed to call on witnesses that would have supported the defense of the defendant. In that case, Bashum, there was also a second-degree murder instruction given, just like there was in this case. And here had counsel, you know, counsel didn't deny that they failed to call these witnesses and that they knew about them, about Rahim and Jasmine, who would have supported my client's defense that, you know, there was two other people with guns there that would have used them against my client that would have supported the self-defense claim and would have supported the second-degree murder conviction. And for these reasons, under the first issue, we ask that you find structural error, reverse my client's convictions, and remand for a new trial. Alternatively, under the second issue, we ask that you remand for a hearing on his ineffective assistance of counsel claims with the appointment of counsel. Thank you, Your Honors. Let me ask you, what more could the trial judge have done under this Krenkel inquiry? He went through each of your clients' claims one by one and asked defense counsel regarding each claim as well. I mean, what more would you have wanted the trial court to do in this case? Well, I think the court could have just applied the correct standard, the possible neglect standard, instead of requiring my client to show ineffective assistance of counsel. But the court was not, you know, its recollection of the facts was incorrect. My client, pro se, had to remind the court that these two witnesses were actually in the house at some point. One of them was there when the shooting occurred, Rahim, and the court didn't understand those facts. The court found that the trial attorneys not knowing what these two witnesses would have testified to was beneficial for the attorneys. When it's not, the case law says that when the trial attorney does not know what the witnesses would have testified to, that that can't result in good trial strategy. And here the court actually found the opposite, said, oh, because they didn't know what they would testify to, we don't know what the testimony would be. That's what the court said. And the case law says that's incorrect. The attorney can't form a good trial strategy if they don't know what the testimonies would be. And so my client did show possible neglect from these two attorneys. Okay, thank you. Justice Hackett, questions? No, thank you. Justice Barberis? Not at this point. All right. Thank you. You'll have five minutes after Ms. Kuhn. Ms. Kuhn, would you like to argue for the state? Thank you, Your Honor. Good morning. Katrina Kuhn for the people of the state of Illinois. May it please the court. Defendant has not met his burden of showing error or the ineffectiveness of counsel on the juror issue. As counsel himself acknowledged, this was an unusual question posed by defense counsel. And the colloquy, if you look at the collective discussion and the entire discussion, it does not reflect bias by Juror 235. Juror 235, as Your Honors have acknowledged in your discussion already, acknowledged the presumption of innocence and indicated that it would be followed. He indicated he would make a decision based, once he had heard the evidence. And defense counsel initiated this discussion and kind of was trying to trick the jury in a way by asking who would vote for not guilty right now. Well, no juror raised their hand. So, you know, apparently that question, you know, needed some discussion. And again, this was not a usual way of questioning the jury. And as Justice Cates pointed out, Juror 235's response was not unequivocal. It was equivocal. And the law is clear that counsel is only charged with questioning or acting if there is an unequivocal statement of bias. There is no error here. And this, again, as Your Honors have noted, was bookended by the zero admonishments and by the clerk's explanation of the presumption of innocence. So, are you suggesting that Juror 235's response to that question from counsel was perhaps an unartful way of basically saying, yeah, we're not going to, you know, when counsel asked who would vote innocent, not guilty, basically what he was saying was we're not going to have a vote until we hear and listen to all of the evidence. He wasn't necessarily saying, oh, he's innocent. He was basically jumping perhaps a step ahead and saying we're not going to do any vote unless we hear all the evidence first. That is exactly what I think defense counsel was trying to get to. But it morphed into this discussion that several jurors were involved in and that indicated some confusion. But just Juror 235's response did point out that we need to hear evidence before we decide anything. And that is the actual bottom line. There is no structural error here. And I will address Morris. But I want to go to the Strickland test first because defense counsel here performed reasonably in not challenging Juror 235. The defendant kind of argues that counsel's choice not to strike this juror reflected poor judgment. And that is actually the opposite presumption that this court needs to take and does take. The presumption of reasonableness is applied to counsel's choices. And when it comes to juror selection, they are virtually unchallengeable. Even in Waldrop, Your Honors noted that this court noted that there's a presumption of sound strategy. And decisions to exercise preemptory challenges are fundamentally a matter of strategy. And Guyard, which is cited in my brief, points out that for a counsel to be deficient in failing to exercise a preemptory, a juror needs to express unequivocal bias and not what could be surmised years later on a cold record. And Morris is inapposite, as stated in my brief. Defendant in Morris was charged with several sexual crimes. A juror was asked if those specific charges would affect the ability of the juror to be fair and impartial. And the juror affirmatively indicated he could not be fair or impartial. He then confirmed that in a second response. That juror was dismissed for cause. That juror then, by some unknown mechanism, that juror sat on the jury anyway. And that is not what we have here. And what the third district said in Morris was that there was a substantial showing of a constitutional violation because that juror participated in jury deliberations after being stricken for cause. And again, this is a false equivalency to equate this case to Morris. Juror 235 did not say he could not be fair and he was not dismissed for cause. So that Morris is inapposite for those reasons. And just as to prejudice under Strickland, if I may go back to that. Defendant has the burden of showing prejudice. Juror bias is not structural error and prejudice is not presumed. And the prejudice test to be applied is whether the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. And again, your honors only get to that if you find that defendant has met the first prong of Strickland, the performance prong, which has not been met. If I could move to the Crankle issue in which I will discuss the facts of the case. The trial court correctly rejected the ineffectiveness claim on its merits without appointing new counsel for defendant. The court applied the correct framework. And again, this goes back to Moore and Ayers and Patrick. This is the well-known framework of Crankle that the court can look at the factual basis. And if it lacks merit or pertains to strategy, the court need not appoint new counsel. And that is the initial inquiry of a Crankle. That is an initial Crankle inquiry. And the court determines whether new counsel is needed. The court can inquire of defense counsel and defendant. And the court may consider the factual and legal merits in their entirety and may do so without appointing new counsel for defendant. And the point of the Crankle inquiry, initial Crankle inquiry, is to allow the original defense counsel to be part of this discussion and let the court determine if that counsel was ineffective before replacing him. Defense counsel seems to argue that counsel in the initial inquiry exceeded the limits of the inquiry by arguing their position. That's not exceeding the limits of a Crankle inquiry. That's something that defendant seems to have argued in their reply brief for the first time. But the defense counsel can certainly participate in an initial Crankle inquiry. And as Justice Cates pointed out, the court was very deliberate in going through all of the points raised by defendant. And as to these two witnesses, counsel is given great deference in investigating witnesses. One of the witnesses was not even present at the shooting. Jasmine was not even in the house, so she could not testify whether defendant acted in self-defense at all. Rahim was defendant represents that Rahim was with him at the house. Pardon me. And defendant represents what Rahim would have testified to. There's no affidavit. There's no indication or proof of what Rahim would have testified to. And counsel, what the law is under Strickland is that counsel needs to make reasonable investigations or make decisions that make reasonable investigations unnecessary. Counsel is not required to go down every hole and investigate everything. So here we have defendant who walked into this house after having previously had a altercation, a fistfight with the victim and lost that fistfight. Defendant, several hours later, walks into this house with his gun, with his gun under his arm. And there was no evidence that other guns were fired here. Defendant then. Defendant. Pardon me just a second. Defendant shot the victim, shot Mr. Williams. There were two victims. He shot Mr. Williams and he just started shooting. He he sprayed 20 bullets. Defendant was the initial aggressor here. There's no indication that either of the victims pulled their weapon. There were three witnesses who testified that the defendant was the only one who pointed a gun when the shooting took place. And there was a gun that was found under the body of the victim, Williams, who was deceased. There was there was no indication that gun was shot. And the ballistics evidence in the investigation were consistent with the witness accounts that the defendant's gun was the only gun that was fired. And. The defendant's gun was a 9mm, is that correct? I believe it was a 9mm. The ballistics expert testified as to that, but he did testify that was the only gun that was fired. And the one under the one victim was a 380, I believe. It was a different, it was a different, a different caliber. I'm sorry, I don't recall this from the record, but do you know specifically what model gun the shooter was using? What 9mm model gun he had? I don't have that at the top of my, I don't have that at my fingertips, Your Honor. I could look for it in the rebuttal if you like during the rebuttal and let you know after that. It also should be noted that defendant here after the shooting, he never went to the police and said he acted in self-defense. He fled to another state. And that is evidence of consciousness of guilt. Your Honors, for all of these reasons, we ask that this court affirm the judgment of the trial court. Thank you, Ms. Kuhn. Any questions, Justice Barberos? No, thank you. Justice Hackett? I do have one. Thank you. Can you address this for me, please? What you just said here in addressing the crankle hearing, I took it to say that counsel may participate in the initial crankle inquiry. But I took part of the position from appellant that their argument was that the court allowed it to advance too far into an evidentiary matter. How do you see that? If I'm understanding your question, Justice Hackett, it's whether the court needed to... I'm not sure if I'm understanding your question, sir. Well, in a general phrasing, it's not disputed that the defense attorney can participate in an initial crankle hearing for court benefit. But I took some of the argument here that the court had mistakenly allowed this to turn into much more of an evidentiary hearing than is normal at an initial crankle hearing. Well, I guess my interpretation of defense counsel's argument was that, and Mr. Castaneda can certainly address that, but that the court needed to go to a full crankle hearing. And I'm not really sure what you're asking me. I mean, my interpretation of defense counsel's argument was that the court needed to make a fine, that it was almost like a threshold question of, for example, when we're doing a first stage post-conviction case under Hodges, and it's an arguable meritorious claim. I felt like that was what defendant's argument was, is that if there's some kind of showing of possible neglect or an arguable claim, that then it needed to proceed to a full hearing. And that's not the correct law either. All right. Didn't mean to distract you from your main point. No, no, no. All right, thank you. Justice Barberis, anything else? No, thanks. Okay. Mr. Castaneda, rebuttal? Yes, thank you, Your Honors. Just to clarify, there's nothing unusual about counsel's questions. Counsel's question went directly to the presumption of innocence. It was straightforward. Counsel stated, that is my point. A lot of people think, on page 219 of the record, think that they can be neutral. That's not our law. Our law is that he is presumed innocent. He is innocent as he sits here until he has proven guilty beyond a reasonable doubt. He is innocent. That's what counsel wanted 235 and the rest of the jurors to understand. 235 expressly rejected this principle. We know this because another juror who was in the courtroom understood this to be a rejection. She said, I speak for myself. I accept that principle. They're presumed innocent because that's what the law says. There's nothing unusual about counsel's questions. It was straightforward. Jurors need to be qualified. It's an important role. They need to know the law. They are given much more complex instructions during the jury instruction phase. And 235 should have understood this, should have accepted it. The cases relied on by the state, Galliard, Waldrop, none of those cases involved the rejection of a Zer principle. These four Zer principles are so important that after the Seminole case in Illinois, that the legislature made a rule requiring courts to initially, you know, it was under counsel's request to give the instructions. And then it was so important that courts must give them at every criminal proceeding with a jury trial. And notably in Waldrop where this court found that a biased juror, and I think, I don't know if counsel misspoke, but a biased jury being tried by a biased jury is structural error. The Illinois Supreme Court tells us that in Glasper, in Thompson, this court told us that in Waldrop recently, just last year. And I'll point out in Waldrop, again, that decision did not involve the rejection of the Zer principle. And this court found that their defendant failed to establish unequivocal bias in part because the juror there accepted all four Zer principles. Here, we don't have that. Yes, the court initially gave the four Zer principles, you know, through the everybody raise your hands if you accepted them. Presumably juror 235 raised his hands, but after that, he expressly rejected this principle and said, no, that's not the deal. Just because someone comes into court, that doesn't mean they're innocent. As to the Kranko issue, yes, counsel was right. There's great deference given to the attorney about who to call, but the law is clear that when the attorney does not know what that testimony would be, that's not sound trial strategy. And counsel does not address any of the cases that we cite in our opening stating that. And Justice Hackett, you're correct. Our argument is that you're allowed to participate. An attorney is allowed to participate in the simple question and answer format. But when it goes beyond that, when it becomes an adversarial process, as it did here, there were two attorneys who were pinned against my client, a pro se client, who defended their positions on why they didn't call the two witnesses. They didn't deny that they knew about them. They didn't deny that they didn't know what their testimonies would be. They said, no, we thought our strategy was better that he just testified because the jury would believe him. We thought it would support the second degree murder conviction. And then counsel kind of guessed that Rahim wasn't paying attention during the shooting. The counsel had no idea what Rahim's testimony would be. And so it became a very adversarial process. And that goes beyond what the neutral proceeding of a preliminary crank inquiry should be. There should have been an attorney appointed to my client to help him. And just to answer some of the few questions, Justice Barbera, the gun was never recovered. The gun that was used for the shooting. And these two witnesses would have provided valuable support to my client's defense. Yes, Jasmine was not in the house when the shooting actually occurred, but she was in that house at some point. She was in the house moments prior. And my counsel's, my client's defense was that he shot because a gun was pointed at him. That gun was recovered by the decedent Antoine. And he shot because D'Angelo was also reaching for his gun. D'Angelo denied having a gun. So it would have been compelling to have two other witnesses say, you know what? They also had guns. D'Angelo did have a gun and it would have corroborated my client's testimony that he shot out of fear that they were going to shoot him first. So it was, you're suggesting that Jasmine would have been able to testify that before she left the room, she saw these other two people with guns pointed at the defendant. No, that she would have, D'Angelo denied having a gun that night. If she would have said, you know, I did see D'Angelo with a gun that would have corroborated my client's testimony saying he was reaching for his gun. Rahim would have been able to testify to the shooting because he was actually there.  Okay. And for these reasons, your honors, we asked them again under the first issue that you find structural error reverse my client's convictions. Every man for a new trial, alternatively that you meant for a proper crankle hearing or for a, for a hearing on his ineffective assistance of council claims with the appointment of council. If your honors have any other questions, otherwise, thank you. Do you think during the crankle hearing that the judge made a finding that there was no merit to your clients claims? Yes. I think the, the, the court incorrectly did that with misunderstanding the facts that the   so why would these two witnesses help you out? You know, you already got the, the second degree murder conviction. It was not just to get the second degree murder instruction. I'm sorry. It was to support a conviction for second degree murder. You know, the court. Excuse me, but aren't you now attacking. The judgment of the trial court, as opposed to the crankle proceeding. No, that was at the crankle proceeding, your honor. Those were the findings by the trial court at the crackle proceeding. I understand, but you're not asking for a, a, are you asking for a new crankle proceeding or are you attacking the judgment of the trial court? So yes, I'm crankle proceeding. Yes. In our briefs, we, we argue first that my client showed possible neglect from his attorney. So that would require. Uh, whether you want to call it a full blown crankle hearing or a hearing on the ineffective system, counsel claims, the point is that we want counsel appointed to him to help him with that hearing. Alternatively, we're asking that you remand for a proper preliminary crankle hearing where the court applies the possible neglect standard and not a full out strickland standard. So those are two alternative requests under the crankle issue. Okay. Thank you. Justice barbarous. Any questions? No, thank you. Justice Hackett. No, thank you. All right. Thank you both for your arguments here today. This matter will be taken under advisement. We will issue an order in due course.